UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHANCELLOR COLE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-2211** |
| **ORLEANS PARISH SHERIFF'S OFFICE, ET AL.** | **SECTION: "N" (4)** |

## ORDER

Before the Court is an **Application for Appointment of Attorney Pursuant to 42 U.S.C. 2000e-5(f)(1)** (**R. Doc. 5**) filed by Plaintiff Chancellor Cole ("Plaintiff"), seeking an order from this Court appointing him legal counsel. The motion was heard with oral argument on Wednesday, October 11, 2011. The motion is unopposed.

### I.  Factual Background

This Americans with Disabilities Act lawsuit was filed as a result of Plaintiff's termination from the Orleans Parish Sheriff's Office on October 30, 2008. (R. Doc. 3, ¶ 4.) Plaintiff alleges that on October 26, 2008, he was hospitalized and diagnosed with diabetes. (R. Doc. 3, ¶ 4.) Plaintiff further alleges that on October 28, 2008, he was hospitalized again, due to the severity of his diabetes. (R. Doc. 3, ¶ 4.) Plaintiff further alleges that soon thereafter, he informed his employer, Orleans Parish Sheriff's Office ("Defendant"), of his diagnosis and requested an accommodation. (R. Doc. 3, ¶ 4.) Plaintiff's complaint states that before he was released from the hospital, he was terminated by Defendant. (R. Doc. 3, ¶ 4.) Plaintiff further alleges that he learned of his termination

1

on November 10, 2008.  (R. Doc. 3, ¶ 4.)

Plaintiff alleges that on November 12, 2008, he filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination in violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*("ADA").  (R. Doc. 3, ¶ 4.)  Plaintiff further alleges that on March 3, 2010, the EEOC issued a determination letter, in which it concluded that Defendant had discriminated against Plaintiff, in violation of the ADA, and offered the Defendant the opportunity to conciliate the case.  (R. Doc. 3, ¶ 4.)

Plaintiff's complaint states that, in response, Defendant requested the EEOC reconsider its findings.  (R. Doc. 3, ¶ 4.)  Plaintiff further alleges that on June 24, 2010, the EEOC denied Defendant's request, and offered Defendant another opportunity to conciliate the case.  (R. Doc. 3, ¶ 4.)  Plaintiff's complaint states that Defendant refused to participate in conciliation.  (R. Doc. 3, ¶ 4.)  Thus, on August 2, 2010, the EEOC forwarded the case to the U.S. Department of Justice ("DOJ").  (R. Doc. 3, ¶ 4.)  Plaintiff further alleges that on June 6, 2011, the DOJ issued Plaintiff his right to sue letter. (R. Doc. 3, ¶ 4.)

On September 6, 2011, Plaintiff filed application and affidavit with this Court to proceed *in forma pauperis* (R. Doc. 1.).  On September 12, 2011, this Court granted Plaintiff's application, and his Complaint was entered into the record.  (R. Docs. 2 and 3.)

As to the instant motion, Plaintiff seeks an order from this Court appointing him legal counsel.  Plaintiff contends that he does not have the financial resources to pay a lawyer.  Plaintiff further contends that he has contacted six different lawyers, but that he does not have the financial resources to pay any of their fees.  The motion is unopposed.

**II.     Standard of Review**

An ADA plaintiff has no absolute right to appointed counsel. Rather, the decision of whether to provide counsel lies solely within the discretion of the Court. *See Caston v. Sears, Roebuck and Co.*, 556 F.2d 1305 (5th Cir. 1977); *Neal v. IAM Local Lodge 2386*, 722 F.2d 247 (5th Cir. 1984); *Gonzalez v. Carlin*, 907 F.2d 573 (5th Cir. 1990).

Case law regarding the ADA, especially in the Fifth Circuit is sparse. However, other courts utilize the same analysis for appointment of counsel requests in ADA cases as in Title VII cases. *See e.g.*, *Filec v. Chicago Transit Authority*, 156 F.R.D. 166 (N.D. Ill. 1994). Therefore, in exercising its discretion, the Court should consider the following relevant factors: (1) whether the complainant has the financial ability to retain counsel; (2) whether the complainant has made a diligent effort to retain counsel; and (3) whether the complainant has a meritorious claim. *Caston*, 556 F.2d at 1309-1311; *Neal*, 722 F.2d at 250.

**III.    Analysis**

    **A.     Ability to Afford an Attorney**

A movant's ability to afford counsel is measured by a more lenient standard than that required to qualify for *in forma pauperis* status. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982). There need only be insufficient assets and income to enable Plaintiff to afford an attorney to investigate and file his claims.

During the hearing, Plaintiff testified that since his termination, he has had different odd jobs, but that he has been unable to secure permanent employment. Plaintiff testified that he has applied for jobs with several law enforcement agencies. However, most law enforcement agencies refuse to hire applicants who were terminated by another law enforcement agency. Thus, the majority have

rejected his application. Plaintiff also testified that he has returned to school, and is working on a joint degree in substance abuse counseling and psychology at Southern University at New Orleans. Plaintiff is financing his education through a Federal Pell Grant and a Direct Student Loan. Plaintiff further testified that he has a number of unpaid medical bills. Finally, Plaintiff testified that his great-grandmother and mother have committed to hosting supper dinners to raise money to cover his court fees.

Considering that Plaintiff has met the heavier burden by showing that he was financially qualified to proceed *in forma pauperis*, and considering his financial status is unchanged, it follows that Plaintiff does not have sufficient funds to afford an attorney. This factor weighs in favor of granting Plaintiff's request for appointment of counsel.

    **B.**     **Efforts to Retain Counsel**

During the hearing, Plaintiff testified that he has made multiple attempts to secure representation, to no avail. Immediately after receiving his right to sue letter from the DOJ, Plaintiff began contacting attorneys. Plaintiff testified that he searched through the phone book for employment attorneys, and contacted the local bar association for a list of attorneys. However, every attorney he contacted indicated that they would require a retainer fee, which Plaintiff cannot afford. Plaintiff testified that the lowest retainer fee he was quoted was $10,000.00. Plaintiff did not have a list of the attorneys he contacted, nor could he recall every attorney he contacted. He did recall, however, contacting attorney James Arruebarrena. According to Plaintiff, Mr. Arruebarrena told him that he would also require a retainer fee, but that he and Plaintiff could discuss certain options.

To be eligible for appointed counsel, the movant must make "a reasonably diligent effort

4

under the circumstances to obtain counsel." *Bradshaw v. Zoological Soc. of San Diego*, 662 F.2d 1301 (9th Cir. 1981). The Fifth Circuit in *Caston* considered for the first time the standard to be applied by district courts when Title VII plaintiffs seek the appointment of counsel. The court, noting that the statute provides for appointment of counsel in such circumstances as the court may deem just, found that the grant of such broad discretion should be limited by some guidelines. *Caston* further suggests that a significant factor is whether the movant has pursued the possibility of a contingent fee arrangement in his attempts to locate an attorney. *See Caston*, 556 F.2d at 1309.

Here, Plaintiff has made multiple attempts to retain an attorney, and discussed alternative fee arrangements with a least one attorney. The Court finds that Plaintiff's efforts to secure counsel were reasonable and diligent. This factor weighs in favor of granting Plaintiff's request for appointment of counsel.

### C. The Merits of the Case

Plaintiff alleges in his complaint that Defendant discriminated against him on the basis of his disability, in violation of the ADA.

Considering the unfairness of imposing involuntary servitude on a member of the bar in an obviously frivolous case, the potential merits of Plaintiff's claim is the most important factor. *See Tatum v. Cmty. Bank*, 866 F.Supp. 988 (E.D. Tex. 1994). When considering the merits, the determination reached by the EEOC should not be ignored. On the other hand, the Court cannot give preclusive effect to the EEOC's determination. Specifically, the Fifth Circuit instructed that although the EEOC's determination should not be the sole basis for a refusal to appoint counsel, the determination of the EEOC is highly probative. *Gonzalez v. Carlin*, 907 F.2d 573, 580 (5th Cir. 1990); *see Newsome v. Entergy Servs.*, 2000 U.S. Dist. LEXIS 14421, 2000 WL 1449885, at *2

(E.D. La. September 26, 2000).

The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions or privileges of employment." 42 U.S.C. § 12112(a). Indeed, the ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A).

In order to establish a prima facie case of discrimination in violation of the ADA, the plaintiff must prove that (1) he has a disability; (2) that he is qualified individual; and (3) that he was subjected to unlawful discrimination because of his disability. *See Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 212 (4th Cir. 1994).

During the hearing, Plaintiff testified that on October 25, 2008, he was admitted into Tulane Hospital, where he was diagnosed with diabetes. When Plaintiff was initially diagnosed, his blood sugar level was in the 600s. After two days in the hospital, Plaintiff was released.

The next day, Plaintiff's blood sugar level spiked to 545. After he was discovered on the floor of his home, Plaintiff was transported by ambulance to Ochsner Kenner Regional Hospital ("Ochsner").[1] Plaintiff was admitted to Ochsner. Upon his admittance to Ochsner, Plaintiff's roommate, doctor, and treating nurses all notified Defendant, specifically Chief Craig McGehee, that Plaintiff was in the hospital. When Plaintiff later called Chief McGehee, his response to Plaintiff was "can you bring the hospital bed to work?"

After three days in Ochsner, Plaintiff was released. Plaintiff's doctor recommended that Plaintiff not return to work until November 5, 2008. Sometime after his release, Plaintiff went to

---

[1] The Court notes that this hospital is now known as Ochsner Medical Center - Kenner.

6

Defendant's office.  Plaintiff testified that Chief McGehee asked him if he needed any additional time off.  In response, Plaintiff told Chief McGehee that his doctor had instructed him not to return to work until November 5, 2008.  Chief McGehee told Plaintiff to take as much time as he needed, and that he wanted to make sure Plaintiff got together.

When Plaintiff returned to work on November 5, 2008, Chief McGehee told Plaintiff he did not have to worry about coming to work.  In response, Plaintiff reminded Chief McGehee that his doctor had authorized him to return to work on November 5, 2008.  Plaintiff also testified that he was on the schedule for that day.  In response, Chief McGehee instructed Plaintiff to take an additional week off.  Chief McGehee further assured Plaintiff that he could use his sick leave and accrued vacation time, and that he would be compensated during this week.

That same day, Plaintiff requested an accommodation.  Specifically, that he be re-assigned to the night shift, to allow time for him to recover from his morning insulin shot, which makes him woozy for about 3-4 hours.  Plaintiff testified that Chief McGehee required him to submit his request for an accommodation in the form of an interoffice memorandum or a "105", which Plaintiff did.

In response to Plaintiff's request for an accommodation Defendant directed Plaintiff to contact his direct supervisor, Captain Flock.  Plaintiff testified that Defendant further informed him that Captain Flock would change Plaintiff's schedule.  As directed, Plaintiff contacted Captain Flock, who told him that it was going to be taken care of.  Plaintiff is not sure whether Captain Flock knew that Chief McGehee had instructed Plaintiff to take an additional week off from work.  Plaintiff further testified that he never received his accommodation.  Nor did he have any follow up conversations with Captain Flock.

While Plaintiff was out on leave for an additional week, Chief McGehee called him and told him that he had been terminated. When Plaintiff asked Chief Magee why he was terminated, Chief Magee responded "at Sheriff's will" and that Defendant had the power to terminate Plaintiff for any reason with, or without notice. Plaintiff testified that he believes he was terminated because he asked for an accommodation.

During the hearing, Plaintiff also testified that following his termination, he filed a Charge of Discrimination with the EEOC. The EEOC investigated Plaintiff's Charge for over two years. During the investigation, the EEOC questioned Plaintiff and contacted ranking deputies in the Defendant's office. At the conclusion of the EEOC's investigation, it issued a determination letter in which it found that Defendant had unlawfully discriminated against Plaintiff on the basis of his disability, and offered conciliation to the Defendant.

Plaintiff testified that at first, Defendant said it would attempt to conciliate the matter. Then, Defendant said it would not attempt to conciliate the matter, and requested the EEOC reconsider its finding. After reviewing Plaintiff's investigation file, the EEOC denied Defendant's request for reconsideration, and again offered Defendant the opportunity to conciliate the matter. The Defendant again declined. Subsequently, the EEOC issued a notice of conciliation failure, and sent the matter to the DOJ. Later, the DOJ issued Plaintiff a right to sue letter.

Plaintiff further testified that before he filed the instant lawsuit, he contacted Defendant's attorney to see if the parties could resolve the matter without Court intervention. Defendant's attorney told Plaintiff that he was going to get with the Sheriff and call Plaintiff back. To date, Plaintiff has not heard back from Defendant's attorney.

The Court finds Plaintiff's claims have merit. In light of the allegations set forth in

Plaintiff's complaint, and his testimony during the hearing, the Court concludes that this factor weighs in favor of granting Plaintiff's request for appointment of counsel. The Court therefore concludes that Plaintiff's request for appointment of counsel should be granted.

**IV.    Conclusion**

Accordingly,

**IT IS ORDERED** that Plaintiff's **Application for Appointment of Attorney Pursuant to 42 U.S.C. 2000e-5(f)(1) (R. Doc. 5)** is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that D. Majeeda Snead, Esq., 2626 Banks Street, New Orleans, LA 70119, phone: (504) 821-4747, is appointed to represent Plaintiff in this matter. The Clerk of the Court shall provide Plaintiff's newly-appointed counsel with a complete copy of the court file at no cost.

New Orleans, Louisiana, this 27th day of October.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

**Clerk to Notify via First-Class mail:**

D. Majeeda Snead, Esq.

2626 Banks Street

New Orleans, LA 70119